ORDERED in the Southern District of Florida on _SEPTEMBER 5, 2008._



A. Jay Cristol, Chief Judge Emeritus
United States Bankruptcy Court

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION
www.flsb.uscourts.gov

In re:

**OCEAN BLUE
LEASEHOLD PROPERTY LLC,** *et al.* [1]

Debtors.

_____/

**CASE NO. 07-17999-BKC-AJC**
(Jointly Administered)

Chapter 11

### MEMORANDUM OPINION ON ORDER TO SHOW CAUSE (D.E. 453)
### AND SETTING FURTHER HEARING

On August 22, 2008, an evidentiary hearing was conducted pursuant to this Court's *Order*

*to Show Cause Why Related Investments, Inc. Should Not Forfeit Deposit and Pay Incidental*

*Damages for Breach of Contract to Purchase Estate Property and Refusal to Comply with Court's*

*Order Granting Sale Motion* (**"Order to Show Cause"**) (D.E. 453) and this Court's Order

Continuing Hearing on Order to Show Cause and Related Deadlines and Scheduling Evidentiary

---

[1] The last four digits of the taxpayer's information for each of the Debtors follow in parentheses: Ocean Blue Leasehold Property, LLC (5600); Ocean Blue Fee Owner, LLC, a Delaware limited liability company (5757); Ocean Blue Leasehold Mezzanine, LLC, a Delaware limited liability company (5686); and Ocean Blue Fee Mezzanine, LLC (5814).

Hearing (D.E. 497). At the hearing, the Court received into evidence without objection all of the exhibits submitted by both Drew M. Dillworth, Chapter 11 Trustee (Exhibits 1-25 and 27-30)[2] and Related Investments, Inc. (Exhibits 1-83), heard the testimony of Drew M. Dillworth, Chapter 11 Trustee (**"Trustee"**), Michael Cutler, the President of Related Investments, Inc. (**"Related"**) and Owen Harvey, the property manager for the 200 Building who is employed by Transwestern, a third-party management company, and considered Related's Response to the Order to Show Cause (**"Related's Response"**) (D.E. 509) and the arguments of counsel.

The principal issues before the Court are (a) whether Related's failure to pay the $250,000 balance of the earnest money deposit required to be paid under the terms of a contract for the sale of certain real estate made with the Trustee constituted a default by Related under that contract entitling the Trustee to recover the paid deposit as liquidated damages; and, (b) if so, in addition to the recovery of the already-paid deposit as liquidated damages, whether the Trustee can recover a judgment against Related for the balance of the deposit Related did not pay.

### Undisputed Facts

The facts concerning the contract, the earnest money deposit and Related's failure to pay the balance of the deposit are not disputed. Related and the Trustee entered into a Purchase and Sale Contract on June 19, 2008 (**"Contract"**) pursuant to which the Trustee agreed to sell to Related certain real property owned by the Debtor's bankruptcy estate commonly known as the 200 Building (**"Property"**). (T-1). The purchase price for the Property in the Contract was $28.6 million.

---

[2]The Trustee's Exhibits are cited herein as "T-___."

Mr. Cutler executed the Contract as Related's president. Mr. Cutler is a sophisticated Florida real estate broker, familiar with commercial real estate contacts generally, and is familiar with the terms of the Contract.

The Contract was approved by this Court's *Order Granting Trustee's Motion to Approve Agreement of Purchase and Sale and for the Entry of an Order Authorizing the Private Sale of Substantially All the Real and Personal Property of the Estates Pursuant to the Joint Consolidated Plan of Reorganization and Free and Clear of All Liens, Claims, Encumbrances, and Interests Pursuant to 11 U.S.C. § 363(f)* entered July 3, 2008 **("Order Approving Contract")** (D.E. 385). In the Contract, Related agreed to pay a total "Earnest Money Deposit" of $500,000 in three installments **("Deposit")**. (T-1, at Exhibit A (Contract), ¶¶ 1.1.4 and 3.1).[3] Related paid the Trustee the first two installments of the Deposit totaling $250,000. Paragraph 1.1.4 of the Contract required Related to pay the balance of the Deposit in the amount of $250,000 on or before the third business day from the date the Court entered its July 3rd Order Approving Contract, or on or before July 9, 2008. Related did not pay the balance of the Deposit when due.

The next day, on July 10, 2008, the Trustee forwarded to Related a Notice of Default and Termination of the Contract for Related's failure to pay the balance of the Deposit. (T-3). Upon default and termination, the Contract provides that the Trustee's sole remedy is to "recover the

---

[3]The Contract is attached as Exhibit A to the Trustee's Exhibit 1, and is cited hereinafter as "T-1, Contract."

Case No. 07-17999-BKC-AJC
(Jointly Administered)

Earnest Money Deposit as liquidated damages and not as penalty in full satisfaction of claims against

[Related] hereunder." (T-1, Contract, ¶ 10.2) (Brackets supplied).

## Related's Defenses

Related defends its failure to pay the balance of the Deposit by claiming it was excused from

payment for two primary reasons. First, Related claims that the Trustee did not provide Related with

accurate information concerning the rent roll for the Property and tenant delinquencies, and

therefore, Related did not discover the true state of the Property's income until some time after

Related executed the Contract. "Related was provided incorrect rent roll information to value the

property." Related's Response at p. 11; *see also* pp. 3 - 7 and 10 - 13. Second, Related asserts that

subsequent to the entry of Court's Order Approving Contract on July 3, 2008, it learned of "open

permits" issued by the City of Miami **("City")** relating to various renovation or repairs made to the

Property. Although such "open permits" do not appear in the public records of Miami-Dade County

where deeds and mortgages in respect of real property are maintained, Related claims that such open

permits could "ripen" into "future code violations, which could turn into liens against the Property,

render[ing] title to it presently unmarketable." Related's Response at p. 14. (Brackets supplied.)

For the reasons set forth below, the Court rejects Related's defenses as being without merit

under the express terms of the Contract and based upon its performance under the Contract. The

Court finds that its failure to pay the balance of the Deposit when due constitutes a clear and

unequivocal breach of the Contract by Related. The Contract itself contains several provisions

which govern the resolution of this issue. Section 1.1.4 of the Contract provides for the payment of

the Deposit, and contains no provision conditioning the payment of any portion of the Deposit upon any other event to be performed under the Contract. Further, other than the Trustee's obligation to deliver clear title to the Property at closing and other closing deliveries, the Contract provided Related with no due diligence, financing or other contingencies whereby Related could elect to terminate the Contract and obtain the return of its Deposit. Moreover, Related had not attempted to terminate or declare a default by the Trustee under the Contract prior to July 9th, the date Related was required to pay the final installment of the Deposit. The following are the relevant provisions of the Contract.

### Key Contract Provisions

1.1.4   Earnest Money Deposit: Initial Deposit: $500,000.00 which shall be due and payable from Purchaser as follows: (I) $200,000.00 upon three business days of execution of Agreement by Trustee, and (ii) $50,000.00 upon 7 business days of execution of the Agreement, and (iii) $250,000.00 upon three business days of court approval of the Agreement. The Earnest Money Deposit shall be held in an interest bearing account for the benefit of the Buyer.

1.1.6   Inspection Period. Purchaser has conducted all required due diligence, requires no further inspection period, and shall purchase the Property AS-IS WHERE-IS as provided for in Section 4.5 below, subject to clear fee simple title.

4.1   Due Diligence Materials. Purchaser acknowledges having (I) previously received various due diligence materials pertaining to the Property which Purchaser further

Case No. 07-17999-BKC-AJC
(Jointly Administered)

acknowledges represent all of the due diligence materials in the possession of Seller

(collectively all such due diligence materials being the "Property Information") and

(ii) entered into a confidentiality agreement with Seller with respect to the Property

Information, which confidentiality agreement shall remain in full force and effect and

is not otherwise modified or amended by this Agreement. Purchaser acknowledges

that Seller, as a duly appointed Trustee pursuant to the Appointment Order is acting

as the receiver and conservator of the Property and has not owned the Property nor

been involved in the ownership, operation or management of the Property and

therefore has limited knowledge and information concerning the Property. Seller

makes no representation or warranty whatsoever with respect to the completeness or

accuracy of the Property Information and Purchaser shall have no claim or charge

against Seller for any material inaccuracies, misstatements or other problems with the

Property Information.

4.2    Physical Due Diligence.  Prior to the date of this Agreement, Purchaser conducted

adequate physical due diligence of the Property, Purchaser requires no further

inspection or physical due diligence and shall purchase the Property AS-IS

WHERE-IS as provided for in section 4.5 below.

4.6    **NO REPRESENTATIONS OR WARRANTIES/AS-IS SALE**.  PURCHASER

AGREES AND ACKNOWLEDGES THAT SELLER HAS NOT MADE AND

MAKES NO REPRESENTATIONS OR WARRANTIES WHATSOEVER TO

PURCHASER OR ANY AGENT, REPRESENTATIVE OR CONTRACTOR OF
PURCHASER, WITH RESPECT TO THE CONDITION OF THE PROPERTY,
INCLUDING ENVIRONMENTAL MATTERS. PURCHASER AGREES AND
ACKNOWLEDGES THAT: (I) PURCHASER SHALL PURCHASE AND
ACQUIRE THE PROPERTY IN ITS "AS-IS/WHERE IS" SHAPE AND
CONDITION, WITH ANY AND ALL FAULTS, IF ANY, AND BASED SOLELY
ON PURCHASER'S OWN INSPECTION, INVESTIGATION AND
EVALUATION OF THE PROPERTY, WITHOUT REPRESENTATION OR
WARRANTY, WHETHER EXPRESS OR IMPLIED; AND (ii) NEITHER SELLER
NOR ANY AGENT OF SELLER HAS MADE ANY REPRESENTATIONS OR
WARRANTIES, EXPRESS OR IMPLIED, CONCERNING THE PROPERTY,
INCLUDING, BUT NOT LIMITED TO, ANY WARRANTIES OR
REPRESENTATIONS AS TO HABITABILITY, MERCHANTABILITY, FITNESS
OR SUITABILITY FOR A PARTICULAR PURPOSE, OR THE COMPLIANCE
OF THE PROPERTY WITH GOVERNMENTAL LAWS. (Emphasis in original.)

## Related Waived Further Due Diligence

Related's claim that it did not obtain accurate information concerning the Property's rent roll which entitled it to withhold payment of the balance of the Deposit is without merit for several reasons. Most significantly, the Contract provides that Related specifically waived any post-Contract due diligence in respect of the Property and agreed to buy the Property "as-is/where-is." Moreover,

Related agreed that it would have "no claim or charge against [Trustee] for any material inaccuracies, misstatements or other problems with the Property Information and the [Trustee] made "no representation or warranty whatsoever with respect to the completeness or accuracy of the Property Information." T-1, Contract, ¶ 4.1. (Brackets supplied.) ("Property Information" is a defined term in the Contract, essentially meaning all the due diligence materials given to Related by the Trustee.) The Court notes that the majority of contracts to sell real estate brought before the Court by trustees in bankruptcy contain similar "as-is/where-is" and disclaimer provisions.

Some six months before entering into the Contract with the Trustee, Related had entered into another contract to buy the same Property from the Debtor-in-Possession **("Debtor")** before the Trustee was appointed. Related's prior contract with the Debtor was executed on December 6, 2007, approved by the Court, and contained a provision providing Related additional time to conduct further due diligence on the Property during which period it could elect to terminate the contract without cause and receive a full refund of its deposit. (T-5, ¶ 4.2) (D.E. 193 and 220).

Related elected not to close under the contract made with the Debtor and received the return of its deposit. During the six months between the date Related signed its first contract for the Property with the Debtor and when Related signed its second Contract for the Property with the Trustee, Mr. Cutler testified that Related spent almost $1 million in performing due diligence on the Property. After performing such substantial due diligence, Related voluntarily agreed in the Contract to purchase the Property "as-is/where-is," and waive all further due diligence of any kind. The Court finds that Related had more than sufficient time and opportunity to conduct due diligence on the

Property for months prior to executing the Contract with the Trustee. Having waived in the Contract any right to conduct further due diligence, Related cannot now claim that its pre-Contract due diligence was somehow inadequate. Indeed, the Court finds it is disingenuous to argue that after spending almost $1 million on its due diligence, Related now claims it was inadequate. (T-1, ¶¶ 1.1.6 and 4.1).

Further, none of the e-mails or letters from Related or its counsel in the days immediately prior or subsequent to the July 9th deadline for Related to pay the balance of the Deposit mentioned any dissatisfaction with the rent roll or other leasing information the Trustee provided about the Property. Indeed, the e-mails and letters from Related's counsel on July 7th, 8th, 9th and 10th all refer only to "open permits" and say nothing about inaccurate rent roll or other leasing issues. *See* T-10, 12, 20, 21, 22, 23, and 24.

After the date of execution of the Contract on June 19th, the first writing Related sent the Trustee complaining about receiving inaccurate rent rolls was Mr. Cutler's letter of July 25, 2008, sent two days after the Court entered its Order to Show Cause and more than two weeks after the deadline for Related to pay the balance of the Deposit. (T-7). Further, Related never filed a motion with the Court complaining about the Trustee's withholding of or providing inaccurate information about the rent rolls, either before or after it entered into the Contract. Accordingly, the Court finds Related's evidence, including Mr. Cutler's testimony, not to be credible, on its defense of being provided with the inaccurate rent rolls or other leasing information excusing its payment of the balance of the Deposit.

### Open Permits Did Not Excuse Payment of Deposit

Related's claim that it was excused from paying the balance of the Deposit due to its post-Contract "discovery" of the open permits is similarly without merit. The Court notes that the contract Related originally made with the Debtor in December 2007 to purchase the Property contains a lengthy provision specifically addressing open permits. (T-5 at ¶ 5.6). In contrast, the Contract executed with the Trustee contains no similar provision, and indeed makes no reference whatsoever to "open permits."

Further, on January 23, 2008, in connection with the earlier contract made with the Debtor, Related's counsel (which was the same counsel that represented Related in connection with the Contract with the Trustee) forwarded to the Debtor's counsel a letter listing approximately 35 "open permits" relating to the Property. (T-29). Even though Mr. Cutler was copied with his counsel's letter, he testified he did not read the three page portion of the letter that listed the 35 open permits. Regardless of the veracity of Mr. Cutler's testimony, it is undisputed that Related's agent, its counsel, knew of the open permits in January 2008, almost six months prior to Related's execution of the Contract with the Trustee.

The Court finds that Related was aware of the "open permits" relating to the Property with the City as early as December 2007. Related was free to investigate any issues with open permits with the City for more than six months before executing the Contract with the Trustee and waiving its right to conduct further due diligence on the Property. Accordingly, Related's claim that it was

"surprised" to learn of the open permits in early July 2008 just before the balance of its Deposit was to be paid is disingenuous and is rejected.

Even though no document relating to the open permits is recorded in the public records of Miami-Dade County where instruments affecting real estate such as deeds and mortgages are required to be recorded, Related claims that such open permits could "ripen" into encumbrances upon the Property. Assuming without deciding that such open permits constitute encumbrances under the applicable provisions of the Contract, paragraph 5.3 of the Contract provided a specific procedure for Related to notify the Trustee in writing of any such "additional defects" to the title of the Property and provided the Trustee with an opportunity to cure such defects. The record is devoid of any written notice from Related required by paragraph 5.3 of the Contract to invoke the "additional defect" procedure and provide the Trustee an opportunity to cure.

Moreover, nothing in paragraph 5.3, or elsewhere in the Contract, conditions the payment of the balance of the Deposit upon there being no additional title defects when payment was due. Thus, even had Related provided the proper written notice of additional title defects pursuant to paragraph 5.3 of the Contract, it nevertheless would have been required to pay the balance of the Deposit to avoid its being in default under the Contract. Simply put, there is no "linkage" in the Contract between Related's obligation to pay the balance of the Deposit and the procedure to provide the Trustee written notice of and an opportunity to cure any additional title defects.

This Court has the power under § 363 of the Bankruptcy Code to enter additional orders upon notice to the City directing that Related's purchase of the Property would be free and clear of any

"encumbrances" that might be created by the open permits.  The Court could have required a sum of money from the closing to be held in escrow to resolve the open permits by completing the required construction, paying any fines or otherwise.  The Court finds that the Trustee suggested to Related that the parties avail themselves of this Court's power to resolve the open permit issue (just as they did when obtaining the Order Authorizing the Contract as a sale and free and clear of all other liens), and escrow funds from the closing proceeds, but Related chose not to avail itself of that opportunity.

If Related had paid the balance of the Deposit and properly exercised its rights under the Contract, the dispute about the open permits may have had a different ending.  The Court finds that the open permit issue is not a title defect, but may have to do with the condition of the Property.  If Related had a legitimate claim about the Property's condition at closing, it may have had the right to terminate the Contract and receive a refund of the Deposit.  However, to avail itself of its right to terminate the Contract for that reason, Related was required to pay the balance of the Deposit when due, which it admittedly did not do.

For the foregoing reasons, the Court concludes that in light of Related's clear and equivocal breach of the Contract in failing to pay the balance of the Deposit when due, the $250,000 deposited with the escrow agent named in the Contract shall be paid to the Trustee as agreed liquidated damages, pursuant to paragraph 10.1 of the Contract.  The escrow agent is directed to pay to the Trustee forthwith the $250,000 it holds pursuant to the Contract together with all accrued interest.

Case No. 07-17999-BKC-AJC
(Jointly Administered)

### **Trustee Not Entitled to Judgment for Balance of Deposit**

The Trustee has further requested that, in addition to Related's payment of agreed liquidated damages from the portion of the deposit previously paid, he be entitled to recover a judgment against Related for the balance of the deposit Related did not pay. Related asserts that applicable law governing the Contract, Florida state law, prevents the Trustee from obtaining a judgment for the unpaid balance of the Deposit. Related argues that because the Contract does not contain specific language entitling the Trustee to recover as liquidated damages all deposits "made or agreed to be made," Florida law prevents the Trustee from recovering anything further from Related beyond the deposit monies already paid. Related cites three cases in support of its argument: *Brown v. Fine*, 102 So. 2d 830 (Fla. 3d DCA 1958), *Brecker v. Furman*, 508 So. 2d 514 (Fla. 4th DCA 1987) and *Campbell v. Salman*, 384 So. 2d 1331 (Fla. 3d DCA 1980).

Upon review of the case law and consideration of the parties' post-hearing submissions, the Court is persuaded that the Trustee is not entitled to a judgment against Related for the remaining balance of the deposit which was never paid.

1.  The Contract Language and Application

The Seller's right to terminate the Contract upon default is specified in Sections 3.3 and 10.1 of the Contract. The relevant portion of Section 10.1 provides:

> If Purchaser fails to perform its obligations pursuant to this Agreement at or prior to Closing for an reason except failure by Seller to perform hereunder, or if prior to Closing any one or more of Purchaser's representations or warranties are breached in any material respect, Seller shall be entitled to terminate this Agreement and

recover the Earnest Money Deposit as liquidated damages and not as penalty, in full satisfaction of claims against Purchaser hereunder.

The relevant portion of Section 3.3 provides:

> In the event of a termination of this Agreement by either Seller or Purchaser, Escrow Agent is authorized to deliver the Earnest Money Deposit to the party hereto entitled to same pursuant to the terms hereof on or before the tenth (10th) business day following receipt by Escrow Agent and the non-terminating party of written notice of such termination from the other party to receive the Earnest Money Deposit.

Sections 1.1.4 and 3.1 of the Contract address "Earnest Money Deposit". Section 1.1.4

provides the following:

> **Earnest Money Deposit**: Initial Deposit: $500,000.00 which shall be due and payable from Purchaser as follows: (I) $200,000.00 upon three business days of execution of the Agreement by Trustee, and (ii) $50,000.00 upon 7 business days of execution of the Agreement, and (iii) $250,000.00 upon three business days of court approval of the Agreement. The Earnest Money Deposit shall be held in an interest bearing account for the benefit of the Buyer.

(Tr. Ex. No. 1; Rel. Ex. No. 38.)

Section 3.1 of the Contract provides, in part, as follows:

> [t]hree (3) days following the execution and delivery of this Agreement and execution of the Agreement by Trustee, Purchaser shall deposit with the Escrow Agent the amount set forth in Section 1.1.4 (the "Earnest Money Deposit").

*Id.* (emphasis in original).

The forgoing provisions of the Contract are clear. Pursuant to Sections 1.1.4 and 3.1, Related

was obligated to pay into escrow, three (3) separate earnest money deposit installments on three (3)

different dates. Related did not make the Final Deposit on or before the deadline of July 9, 2008.

Consequently, pursuant to Section 10.1, the Trustee was entitled to terminate the Contract - as he

did by letter to Related dated July 10, 2008. Pursuant to Section 3.3 of the Contract, upon receiving

notice of the termination, the Escrow Agent was charged with delivering the Earnest Money Deposit

to the Trustee. However, the Escrow Agent could deliver to the Trustee only what had been paid by

Related into escrow at the time the Trustee terminated the Contract - $250,000.

Nothing in the Contract entitles the Trustee to compel Related to pay the estate the Final

Deposit at this juncture. Therefore, the Trustee cannot recover as liquidated damages any Earnest

Money Deposit that was not held in escrow by the Escrow Agent.

### 2. Payment of Final Deposit Not Required Under Contract or Florida Law

The general rule under Florida law is that, "[w]hen a real estate contract provides that if a sale

is not closed because of the fault of the buyer, the deposit paid under the contract is to be retained

by the seller, the seller cannot recover a deposit not actually made." *Stewart v. Mehrlust,* 409 So.

2d 1085, 1086 (Fla. 4th DCA 1982)(reversing a trial court judgment awarding seller earnest money

deposit not paid by defaulting buyer); *Campbell v. Salman,* 384 So. 2d 1331, 1333-34 (Fla. 3d DCA

1980)(affirming a trial court's summary judgment limiting the aggrieved seller's liquidated damages

to $1,000 in earnest money deposited by the buyer, not the $14,000 that the buyer failed to deposit);

*Brown v. Fine,* 102 So. 2d 830, 831 (Fla. 3d DCA 1958)(affirming trial court dismissal of seller's

claim for a deposit not actually made by the buyer).

Case No. 07-17999-BKC-AJC
(Jointly Administered)

The contract in the *Stewart* case contained a default and remedies provision that allowed an aggrieved seller to recover the single earnest money deposit on the buyer's default:

> If Buyer fails to perform this Contract within the time specified, the deposit(s) paid by the Buyer may be retained by or for the account of Seller as liquidated damages.

*Stewart*, 409 So. 2d at 1086. Even where the contract provided for a single deposit (one that was never paid by the defaulting buyer), the *Stewart* court would not award damages to the aggrieved seller because the contract provided for liquidated damages from the deposit "paid" (not deposits "to be paid") by the buyer.

The contract in the *Campbell* case required two (2) earnest money deposits and, like the contract in the *Stewart* case, it provided that upon the buyer's default the seller was entitled to the liquidated damages in the amount of the deposits "paid" by the buyer:

> If the contract is executed by both the buyer and the seller and the sale is not closed because of default of the buyer, the deposit paid hereunder may be retained by the seller as liquidated damages.

*Campbell*, 384 So. 2d at 1333.

While Florida courts have identified an exception to the general rule, the exception is narrow and applies only when a real estate purchase and sale contract specifically states that a seller's liquidated damages shall be derived from an earnest money deposit required under a contract which has been paid, and is required to be paid by the defaulting buyer. *See Brecker v. Furman,* 508 So. 2d 514 (Fla. 4th DCA 1987). The *Brecker* court held that by including the following contract terms, the buyer and seller bargained for the seller's liquidated damages to include both the earnest money deposit which was paid, and was to be paid by the buyer:

Case No. 07-17999-BKC-AJC
(Jointly Administered)

> If Buyer fails to perform the Contract within the time specified, the
> deposit(s) made *or agreed to be made by Buyer* may be retained or
> recovered by or for the account of seller as liquidated damages,
> consideration for the execution of the Contract and in full settlement
> of any claims.

*Id.* at 514 (emphasis in original). *See also, Peterson Homes, Inc. v. Johnson*, 691 So. 2d 563, 564

(Fla. 5th DCA 1997)(reversing the trial court, finding that a binding contract existed where a buyer

failed to pay the required deposits notwithstanding that the contract included a liquidated damages

provision which specified that upon buyer's default, seller could retain all deposits paid by buyer and

deposits agreed to be paid).

In the *Campbell* and *Stewart* cases, the contract default and remedies provisions described

the respective sellers' rights to the earnest money deposits as liquidated damages by using the past

tense of the verb to pay (*i.e.,* "deposit paid hereunder;" in *Campbell* and "deposit(s) paid by the

Buyer," in *Stewart*). In contrast, the contract in the *Brecker* case described the earnest money deposit

liquidated damages by using both the past and future perfect tenses of the verb to make, *i.e.,* "the

deposit(s) made or to be made by Buyer" (emphasis added).

In this case, the termination provisions of the Contract do not use any verb to describe the

amount of the earnest money deposit to be retained upon the Purchaser's default. Section 3.3 of the

Contract, entitled "Disposition of Earnest Money Deposit," provides some guidance that the parties

intended for liquidated damages to be limited to the earnest money deposit already paid by Related

because this Section instructs the Escrow Agent to turnover the Earnest Money Deposit upon

termination of the Contract to the party entitled to the deposit - in this case, the Trustee.[4]

---

[4]Case law in Illinois is similar to that in Florida with respect to contract interpretation of liquidated damages
clauses. *See, Brown v. Real Estate Resource Management, LLC (In re Polo Builders, Inc.)*, 388 B.R. 338,
366-367 (Bankr. N.D. Ill 2008)(ruling that "[u]nder Illinois law, 'a seller of real property may not recover

Case No. 07-17999-BKC-AJC
(Jointly Administered)

In light of the weight of Florida authorities having adopted the rule that an aggrieved seller is limited to the earnest money paid by a buyer at the time of contract termination, plus the fact that the Contract in this case does not specifically state that the Trustee's liquidated damages includes the Purchaser's earnest money deposit "to be paid" by the Purchaser, as in the *Brecker* case, the Court concludes that the Trustee is not entitled to an additional $250,000 recovery from the Purchaser.

3.  Interpretation of the Term "Earnest Money Deposit" in the Contract

The Trustee argued that the Contract clearly states the opposite - that he is entitled to recover as liquidated damages the full $500,000 "Earnest Money Deposit" as that term is defined in Section 10.1.  In response, Related argued that the definition of Earnest Money Deposit is not entirely clear in the Contract, and thus, neither is the amount of liquidated damages the Trustee may recover.

In *City of Homestead v. Johnson*, the Florida Supreme Court was asked to interpret the meaning of certain terms in an agreement and in doing so, relied upon

> the rule of construction requiring courts to read provisions of a contract harmoniously in order to give effect to all portions thereof. *See, Sugar Cane Growers Cooperative of Florida, Inc. v. Pinnock*, 735 So.2d 530, 535 (Fla. 4th DCA 1999)(holding contracts should be interpreted to give effect to all provisions); *Paddock v. Bay Concrete Indus., Inc.*, 154 So.2d 313, 315 (Fla. 2d DCA 1963)("stating 'All the various provisions of a contract must be so construed, if it can reasonably be done, as to give effect to each.'").

760 So. 2d 80, 84 (Fla. 2000). *See also*, *Clark Retail Group, Inc. v. Clark Retail Enterprises, Inc.* (*In re Clark Retail Enterprises, Inc.*), 308 B.R. 869, 891 (Bankr. N.D. Ill. 2004) (where the court

---

as liquidated damages sums which have not been paid by the buyer, absent a contrary provision.'" (citing *Newcastle Properties, Inc. v. Shalowitz*, 582 N.E.2d 1165, 1171 (Ill. 1991).)

considered an argument similar to that raised by the Trustee and stated "despite Clark's urging that the PSA's express definition of 'earnest money' is controlling, a literal interpretation may be disregarded when such a reading would produce nonsensical results.")

Reading the Contract as a whole, the Court concludes that the strict definition of Earnest Money Deposit found in Section 1.1.4 is not the meaning intended by the parties when the term was used in Sections 3.1, 3.3 and 10.1 of the Contract, which Sections govern the Seller's rights and remedies upon the Buyer's default. In Section 3.1, a "short cite" definition of Earnest Money Deposit is found after the following sentence: "Three (3) days following the execution and delivery of this Agreement and execution of the Agreement by Trustee, Purchaser shall deposit with the Escrow Agent the amount set forth in Section 1.1.4 . . . ." However, Section 1.1.4 of the Contract provides that the amount to be deposited into escrow by the Buyer three (3) days after execution of the Contract is $200,000.[5] The Escrow Agent is duty-bound pursuant to Section 3.3 to deliver the Earnest Money Deposit to the non-breaching party after the Contract is terminated, and within ten (10) business days of receiving notice of the termination. Surely, the parties did not intend this provision to mean that the Escrow Agent must deliver an Earnest Money Deposit which exceeds the amount of the Escrow Funds.

Lastly, Section 10.1 provides that the Seller is entitled to "terminate the Contract and recover the Earnest Money Deposit as liquidated damages." No guidance is given in the Contract regarding from whom the Trustee may recover the Earnest Money Deposit, but upon reading the provisions of the Contract in a harmonious manner in an effort to give effect to all of the Contract terms, the

---

[5]/This language could be read to mean that $200,000 was all that was required to be deposited into escrow under the Contract, and, as a result, is the maximum amount the Trustee may recover as liquidated damages pursuant to Section 10.1. Yet, such an interpretation would attribute no meaning to Section 1.1.4

Court concludes that the party from whom the Seller may "recover" is the Escrow Agent - not Related. Such an interpretation of the Contract is consistent with Florida law which discourages interpreting a liquidated damages provision broadly and requires that an agreement contain clear and specific language for a seller to be entitled to recover from a buyer upon default an earnest money deposit which was never paid to the seller.

4.  Ambiguity in Contract Terms Resolved By Extrinsic Evidence in the Record

The foregoing discussion could lead a court to find that the Contract may be ambiguous. A contract provision is ambiguous when it "may fairly be understood in more than one way." *FMS Mgmt Sys., Inc. v. Rodriguez (In re Ranch House Motor Inn Int'l, Inc.),* 335 B.R. 894, 903 (Bankr. M.D. Fla. 2006). Under Florida law, when a contract is ambiguous, the proper interpretation of any ambiguity is an issue of fact requiring the Court to determine the intent of the parties based on extrinsic evidence. *Id.* at 898. Moreover, "[i]t is well settled law that where the language of a contract is ambiguous or doubtful, the contract should be construed in the light most favorable to the nondrafting party." *Hancock v. Brumer, Cohen, Logan, Kandell & Kaufman,* 580 So. 2d 782, 783 (Fla. 3d DCA 1991).

At the hearing, the Trustee testified that he prepared and provided a form contract to all prospective purchasers of the property that is the subject of the Contract. The e-mail correspondence admitted into evidence reflects that Related did not revise the terms of the Contract at issue. *See* Tr. Ex. No. 14 and Rel. Ex. No. 34. Consequently, any ambiguity that cannot be resolved by the extrinsic evidence must be construed in favor of Related.

In this case, based on the parties' evidence concerning the Trustee's conduct subsequent to Related's failure to pay the Final Deposit, it is obvious that the parties did not bargain for or

understand the Contract terms to include the right to recover deposits not actually paid by Related as liquidated damages. Specifically, on July 9, 2008, the Trustee's counsel sent a letter to Related warning Related that if it did not make the Final Deposit, the Trustee would retain the $250,000 already paid by Related into escrow. (Tr. Ex. No. 11; Rel. Ex. No. 44.) In addition, the Trustee's July 10th letter to Related terminating the Contract states that the Trustee "shall retain that portion of the Earnest Money Deposit already paid to seller . . ." and that the Trustee reserves his right to recover additional "expenses and attorneys' fees and costs" incurred as result of the Contract being terminated. (Tr. Ex. No. 3; Rel. Ex. No. 45). The Trustee's conduct does not exhibit any intent to recover the Final Deposit. Rather, the Trustee's conduct demonstrates that his understanding of the Contract was that the bankruptcy estate was only entitled to retain the portion of the Earnest Money Deposit already paid by Related. Thus, pursuant to the Contract terms and Florida law, the Trustee's recovery from Related is limited to the amount of the Earnest Money Deposit already paid, and Related will not be compelled to pay an additional $250,000.00.

## Hearing on Attorney's Fees and Costs

Under paragraph 12.15 of the Contract, the prevailing party is entitled to recover reasonable attorney's fees, costs and other expenses incurred in this litigation. In this matter, there were 2 issues, and each party prevailed on 1 of the issues, thereby entitling each to attorneys fees, costs and other expenses from the other. However, the Court notes that most of the trial was devoted to the issue of default and the agreed payment of the already-paid Earnest Money Deposit as liquidated damages – the issue upon which the Trustee prevailed, while an insignificant amount of time was expended at trial on the issue of the Trustee's entitlement to the remaining balance of the Earnest Money Deposit agreed to be paid – the issue upon which Related prevailed. Pursuant to the Court's

Case No. 07-17999-BKC-AJC
(Jointly Administered)

Order Continuing Hearing on Order to Show Cause (D.E. 497), a hearing will be conducted before the undersigned on _OCT 22 2008_ at _8:00 pm_, in Courtroom 1410, at the U.S. Bankruptcy Court, 51 S.W. First Avenue, Miami, Florida 33130, to consider the award of reasonable attorney's fees and costs (i) to the Trustee for prevailing on the issue of default and payment of agreed liquidated damages from the Earnest Money Deposit already paid, and (ii) to Related for prevailing on the issue of entitlement to the remaining balance of the Earnest Money Deposit agreed to be paid.  Each party shall file and serve upon the other party and its counsel ten days prior to the hearing a motion detailing the amount of fees and costs each seeks to recover, and any objections to the motions shall be filed no later than two business days prior to the hearing.

# # #

**Copy furnished to:**

Harold D. Moorefield, Jr., Esq.
Stearns Weaver Miller Weissler, et al.
150 West Flagler Street, Suite 2200
Miami, Florida 33130
hmoorefield@swmwas.com

Lynn Maynard Gollin, Esq.
Tew Cardenas LLP
1441 Brickell Avenue, 15th Floor
Miami, FL  33131

(Attorney Moorefield is directed to serve a conformed copy of this Order upon all interested parties and to file a Certificate of Service)